In the Matter of the Application of RYE COUNTRY DAY SCHOOL, Petitioner, for an Order of Certiorari against THOMAS M. LYNCH and Others, as and Constituting the STATE TAX COMMISSION OF THE STATE OF NEW YORK, Respondents.

Third Department, January 19, 1934.

*Winthrop, Stimson, Putnam & Roberts* [*Albert W. Putnam* and *Percy W. Crane* of counsel], for the petitioner.

*John J. Bennett, Jr., Attorney-General* [*Wendell P. Brown, Assistant Attorney-General*, of counsel], for the respondents.

RHODES, J.  Without reviewing the various steps incident to the incorporation of the petitioner, it is sufficient for present purposes to say that a charter was issued to it by the Regents pursuant to section 59 of the Education Law.  That section provides in part that "under such name, with such number of trustees or other managers, and with such powers, privileges and duties, and subject to such limitations and restrictions in all respects as the Regents may prescribe in conformity to law, they may, by an instrument under their seal and recorded in their office, incorporate any university * * * or other institution or association for the promotion of science * * * or other department of knowledge, or of education in any way * * *.  No institution or association

which might be incorporated by the Regents under this charter shall, without their consent, be incorporated under any other general law."

Subdivision 12 of section 3 of the General Corporation Law provides that the term " ' certificate of incorporation ' includes articles of association or any other written instruments required by law to be filed, to create a corporation."

The charter thus issued was granted to certain specified individuals, and " their associates and successors, as a school for the elementary and secondary instruction of boys and girls, * * * with the persons named as incorporators for its first Board of Trustees, to hold until their successors shall be chosen by the members of the corporation, with power therein to increase or decrease its membership in such manner and upon such terms as shall be provided for by the general rules of its trustees, and with power in them from time to time, by unanimous vote of their full board, to fix their terms of office and their number."

The charter as originally granted contained no provision relative to capital stock, but later was amended " by authorizing the corporation to have a capital stock of One hundred thousand Dollars, ($100,000) to be issued in such denominations and upon such terms as the trustees shall determine."

By-laws of the corporation were adopted stating the purposes of the corporation in language identical with the purposes set forth in the charter; and that " the members of this corporation shall consist of the following: (a) the parents (including both father and mother) of each scholar in actual attendance at the school; (b) each individual holder of a certificate or certificates of stock issued by the corporation; " that " at all meetings * * * of the corporation each individual member shall be entitled to one vote; " that the " corporation shall have an authorized capital stock of One hundred thousand ($100,000) Dollars par value. The number of shares of stock that may be issued by this corporation shall be Twenty thousand (20,000) shares of the par value of Five ($5.00) Dollars each; " that " the holders of the capital stock of this corporation shall not be entitled to receive any dividends or any distribution of profits of any kind by reason of such stock ownership prior to the dissolution of this corporation. Certificates of stock may be issued to persons contributing monies to the support of the school operated by this corporation in an amount at their face value equal to the amount of such contributions. All such certificates, however, shall be issued to, and shall be received by, the holder thereof upon the express agreement of such holder (1) that this corporation is an educational corporation not operated, and not to be

operated, for profit and that such certificates of stock shall merely represent the proportionate interest of the holder thereof in the assets of the corporation upon dissolution, and (2) that such holder shall not vote his stock in favor of dissolving this corporation unless and until such dissolution shall have been previously authorized by the vote of the members of this corporation duly had in accordance with the By-Laws of this corporation. In case of the dissolution or liquidation or winding up of the corporation * * * the assets and funds of the corporation, after the payment in full of its debts and obligations, shall be divided and paid to the holders of stock according to their respective shares."

The certificates of stock issued by the corporation set forth the conditions referred to and subject to which they were issued.

It is clear that petitioner is not to be classified technically as a stock corporation (*Rensselaer County Agricultural Society* v. *Weatherwax*, 229 App. Div. 30; affd., 255 N. Y. 329), because the General Corporation Law, section 3, subdivision 3, defines a stock corporation as one having shares of stock and which is authorized by law to distribute dividends to the holders thereof. It is true that the corporation, by amending its by-laws, could provide for distribution of dividends, but under the by-laws as they now exist, this is not permitted. If petitioner is not a stock corporation as defined in the General Corporation Law, then it would seem to fall within the classification of a non-stock corporation which is defined by subdivision 4 of section 3 of that law as including every corporation other than a stock corporation, a municipal corporation or a public benefit corporation. Likewise petitioner is not a membership corporation because a membership corporation is defined by section 2 of the Membership Corporations Law as not including a stock corporation or one organized for pecuniary profit, but is one organized under the Membership Corporations Law. It perhaps is sufficient to say that it is an educational institution incorporated under the Education Law. Unquestionably the purpose for which the corporation was organized and conducted was and is to carry on the school as a community undertaking to provide therein educational facilities. It has been financially successful and has accumulated profits.

In the light of these facts it is to be determined whether petitioner is subject to the franchise tax which has been imposed. Its principal argument in opposition is that it is not a business corporation and is, therefore, not subject to the franchise tax imposed by article 9-A of the Tax Law.

Article 9-A, as originally enacted by chapter 726 of the Laws of 1917, was entitled " Franchise Tax on Manufacturing and Mer-

cantile Corporations." By chapter 628 of the Laws of 1919 the title was changed to " Franchise Tax on Business Corporations." Section 209 of said article has always provided that " for the privilege of exercising its franchise in this State in a corporate or organized capacity, every domestic corporation   *   *   *   shall annually pay in advance   *   *   *   an annual franchise tax." This change in the title is significant. By the title of the original enactment the article related only to manufacturing and mercantile corporations. (See *People ex rel. Turner Const. Co.* v. *Cantor*, 196 App. Div. 213; affd., 231 N. Y. 610.) It is evident that the term " business corporations " has wider application than " manufacturing and mercantile corporations." (See *Flint* v. *Stone Tracy Co.*, 220 U. S. 107, at p. 171.) It is true that paragraph 8 of section 3 of the General Corporation Law defines a business corporation as a corporation formed under or subject to the Stock Corporation Law, and petitioner does not come within the terms of this definition. It was not incorporated in the manner provided by article 2 of the Stock Corporation Law, entitled " Formation of Business Corporations;" nor in the manner specified in the Business Corporations Law. It seems apparent, however, that by the title " Franchise Tax on Business Corporations," it was the intention of the Legislature to impose such tax upon any corporation engaged in business activities. By subdivision 15 of section 3 of the General Corporation Law the business of a corporation is defined as the operations for the conduct of which it is incorporated. It will be noted that by section 209 of the Tax Law the franchise tax is imposed on " every domestic corporation." The only exemptions are specified in section 210, which relate to real estate corporations, holding corporations, transportation corporations and banks.

The petitioner certainly comes within the letter of the law. It is exercising its franchise, that is, it is carrying on the activities for which it was organized and incorporated, and in this sense is engaged in business; for this privilege the Legislature has imposed a franchise tax.

The determination should be confirmed, with fifty dollars costs and disbursements.

HILL, P. J., McNAMEE, CRAPSER and HEFFERNAN, JJ., concur.

Determination confirmed, with fifty dollars costs and disbursements.